UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-22539-BLOOM/Torres

DOGWOOD STATE BANK,
*a North Carolina state-chartered bank*,

      Plaintiff,

v.

MANAL S. MOUSSA-OLIVER,
*individually and* MICHAEL W. OLIVER,
*individually*,

      Defendants.
_____/

**ORDER ON PLAINTIFF'S
MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon the Plaintiff Dogwood State Bank's ("Plaintiff") Motion for Summary Judgment, ECF No. [24], filed on December 28, 2023. Defendants Manal S. Moussa-Oliver and Michael W. Oliver ("Defendants") filed a Response, ECF No. [32], to which Plaintiff filed a Reply, ECF No. [33]. The Court has reviewed the Motion, all opposing and supporting submissions,[1] the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted on all counts.

**I. BACKGROUND**

   **A. Material Facts**

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

---

[1] Plaintiff filed a Statement of Material Facts ("SMF") in support of its Motion for Summary Judgment, ECF No. [25]. Defendants failed to file a responsive Statement of Material Facts, but each attached an affidavit to their Response to Plaintiff's Motion for Summary Judgment, ECF No. [32-5] at 1-8, and their responses to requests for admissions, ECF Nos. [25-2], [25-3].

Case No. 23-cv-22539-BLOOM/Torres

Plaintiff Dogwood State Bank is a North-Carolina state-chartered bank. SMF, ECF No. [25] ¶ 1. On November 29, 2021, 1845 Garfield Street LLC and Sunny Days Assisted Living Facility LLC (collectively the "Borrowers") executed and delivered to the Plaintiff a U.S. Small Business Administration Note in the principal amount of $4,317,000.00 (the "Note") evidencing a commercial loan made by the Plaintiff to the Borrowers. *Id.* at ¶ 4. On November 29, 2021, Defendants, the Managers of 1845 Garfield Street LLC and Sunny Days Assisted Living Facility LLC, each respectively executed and delivered to the Plaintiff a U.S. Small Business Administration Unconditional Guarantee for payment of all amounts due and owing under the Note. *Id.* at ¶¶ 5,6; Moussa-Oliver Unconditional Guarantee, ECF No. [25-1] at 13-17; Oliver Unconditional Guarantee, *Id.* at 18-22. The Guarantees each state the following:

> 1. GUARANTEE:
> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.
> ….
> 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES: To the extent permitted by law,
> A. Guarantor waives all rights to:
>     a. Require presentment, protest, or demand upon Borrower;
>     b. Redeem any Collateral before or after Lender disposes of it;
>     c. Have any disposition of Collateral advertised; and
>     d. Require a valuation of Collateral before or after Lender disposes of it.
> B. Guarantor waives any notice of:
>     a. Any default under the Note;
>     b. Presentment, dishonor, protest, or demand;
>     c. Execution of the Note;
>     d. Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
>     e. Any change in the financial condition or business operations of Borrower or any guarantor;
>     f. Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
>     g. The time or place of any sale or other disposition of Collateral.

    C. Guarantor waives defenses based upon any claim that:
        a. Lender failed to obtain any guarantee;
        b. Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
        c. Lender or others improperly valued or inspected the Collateral;
        d. The Collateral changed in value or was neglected, lost, destroyed, or underinsured;
        e. Lender impaired the Collateral;
        f. Lender did not dispose of any of the Collateral;
        g. Lender did not conduct a commercially reasonable sale;
        h. Lender did not obtain the fair market value of the Collateral;
        i. Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
        j. The financial condition of Borrower or any guarantor was overstated or has adversely changed;
        k. Lender made errors or omissions in Loan Documents or administration of the Loan;
        l. Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
        m. Lender impaired Guarantor's suretyship rights;
        n. Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
        o. Borrower has avoided liability on the Note; or
        p. Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

*Id.* at 13-15, 18-20.

Further, the Guarantees provide:

7. DUTIES AS TO COLLATERAL: Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

*Id.* at 15, 20. In addition, the Guarantees state:

9. GENERAL PROVISIONS:
A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
….
G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

*Id.* at 15-16, 20-21.

### 1. The Default Under the Loan

On March 24, 2023, Defendants executed and delivered to Plaintiff a Loan Modification Agreement (the "Loan Modification Agreement"), in which the Defendants reaffirmed their obligations under the Guarantees (collectively, the "Guarantees") and waived and released any and all defenses, counterclaims, offsets, cross-claims, claims and demands of any kind or nature against Plaintiff. ECF No. [25] ¶ 8.

The Borrowers failed to make the regularly scheduled monthly payments owed under the Note when due on April 1, 2023, and all regularly scheduled monthly payments due thereafter. *Id.* at ¶ 9. On May 23, 2023, Plaintiff provided the Borrowers and Defendants a Notice of Default and Demand for Cure Payment letter (the "Default Letter"). *Id.* at ¶ 12, ECF No. [25-1] at 43-44.[2]

As a result of the Borrowers' and Defendants' failure to cure the monthly payment defaults set forth in the Default Letter, Plaintiff demanded full and immediate payment of all obligations under the Note. Plaintiff sent a letter to the Borrowers and Defendants dated June 8, 2023 (the "Second Default Letter"). *Id.* at ¶ 13, [25-1] at 46. The Second Default Letter stated:

> As of June 8, 2023, the total accelerated Obligations owed under the Loan Documents is as follows:

---

[2] The Default Letter stated:
Demand is hereby made that the outstanding amount currently due under the Loan Documents ($93,558.57) be paid to Lender no later than June 1, 2023. If full payment of the outstanding amount currently due is not timely made on June 1, 2023, together with the regularly scheduled monthly payment of $38,936.30 also due on June 1, 2023, Lender will have no choice but to accelerate the amounts owed under the Loan Documents, to exercise its rights under the Pledge Agreement by withdrawing all of the Deposits held in the Account and applying such funds by offset toward the outstanding principal balance due under the Loan Documents, and to pursue its other available legal and equitable remedies under the Loan Documents, all without further notice or demand. These remedies may include, without limitation, filing a civil action for damages, foreclosure of its liens and security interests in the collateral, and/or replevin of the collateral, which rights are expressly reserved.
ECF No. [25-1] at 43.

4

      Principal: $4,232,437.33
      Interest: $112,277.16
      Late Charges: $3,114.90

Interest will continue to accrue on the outstanding principal sums at the per diem rate of $1,175.68 until all Obligations are paid in full. In addition to the foregoing accelerated Obligations owed, the Borrowers are also obligated to the Lender for the attorneys' fees and costs incurred by the Lender as a result of the Borrowers' payment defaults…

Additionally, based on the outstanding defaults, Lender hereby makes demand upon all rents, issues, and profits, under the collateral, and further requests that such amounts be remitted to Lender immediately.

Lender's receipt and acceptance of any partial payments shall not cure the aforementioned defaults or reinstate the accelerated Obligations. Any partial payments received by Lender shall be applied in the manner permitted in the Note and related loan documents and shall not be deemed to be a waiver, election, or estoppel of any rights, remedies, defenses, and objections available to Lender under the Loan Documents, under applicable laws, and in equity. Notwithstanding Lender's receipt and application of any partial payments made by Borrowers, the subject Loan shall remain accelerated and in default.

In the event that the Obligations are not promptly repaid in full, Lender intends to exercise its rights and remedies under the Loan Documents and applicable law, including without limitation, exercising its rights under the Pledge Agreement by withdrawing all of the Deposits held in the Account and applying such funds by offset toward the outstanding Obligations due under the Loan Documents, and also commencing litigation to enforce the Note and the Guaranties for full payment of the total outstanding Obligations, all without further notice or demand.

ECF No. [25-1] at 46.

The Borrowers and Defendants failed to pay. ECF No. [25] at ¶ 14. Plaintiff now requests from Defendants under the respective Guarantees: (i) the principal balance in the amount of $4,232,437.33; (ii) accrued interest in the amount of $337,184.18 through December 17, 2023; and (iii) late fees of $4,672.35, for a total amount due and owing of $4,574,293.86, through December 17, 2023, plus legal fees and costs incurred and per diem interest of $1,175.68 accruing after December 17, 2023. *Id.* at ¶ 15.

## 2. The Collateral Sale and Proceeds

In March of 2023, the Borrowers and Defendants requested that Plaintiff agree to a sale of certain real property securing the subject loan, consisting of a condominium located at 11 Island Avenue, Unit 1907, Miami Beach, FL 33139 (the "Condo Property"). *Id.* at ¶ 17. Plaintiff agreed to the requested release of its mortgage encumbering the Condo Property, and Plaintiff, the Borrowers, and the Defendants executed a Loan Modification Agreement on March 24, 2023. *Id.* at ¶ 18. On March 24, 2023, the Condo Property was sold, the mortgage was released, and the net sale proceeds totaling $490,656.08 were deposited into a restricted account and pledged as collateral securing the Note. *Id.* at ¶ 19.

In the Loan Modification Agreement, "Borrower" refers to 1845 Garfield Street LLC and Sunny Days Assisted Living Facility LLC jointly, and "Obligors" refer to the Borrower jointly with the Defendants Manal S. Moussa-Oliver and Michael W. Oliver. It provides:

> 4. Representations. Acknowledgments, and Covenants.
> ….
> (b) <u>Collateral</u>. The Borrower acknowledges that all of the Collateral identified in the Loan Documents secures and shall continue to secure the Note, as well as any other obligations created hereunder or pursuant to the Loan Documents, except as may be released in accordance with the terms and conditions of this Agreement. There has been no interruption, cessation, or other lapse of the aforesaid security interests in the Collateral.
> (c) <u>No Obligation to Release</u>. Before execution and delivery of this Agreement, the Bank had no obligation to release any Collateral or to negotiate with the Obligors or any other person or entity concerning any of the foregoing. The Obligors agree that the Bank's execution of this Agreement does not create any such obligations other than as expressly set forth herein. Except as provided herein, the execution and delivery of this Agreement shall not: (a) give rise to any obligation on the part of the Bank to extend, modify, or waive any term or condition of any of the Loan Documents; (b) give rise to any defense(s) or counterclaim(s) concerning the right of the Bank to compel payment of the obligations or otherwise enforce its rights and remedies under any of the Loan Documents; or (c) establish a custom or course of dealing between or among the Obligors and the Bank.
> (d) <u>No Defenses or Claims</u>. The Obligors, jointly and severally, hereby acknowledge and agree that they do not have any defense, counterclaim, offset, cross-complaint, claim, or demand of any kind or nature whatsoever, including

without limitation any usury or lender liability claim or defense, arising out of the Loan Documents or any past relationship between or among the Obligors and the Bank that can be asserted by the Borrower or the Guarantors either to reduce or eliminate all or any part of their liability for the Loan Documents or to seek affirmative relief or damages of any kind or nature from the Bank. The Obligors, jointly and severally, further acknowledge that to the extent that any such claim should in fact exist, including without limitation any usury or lender liability claim, it is being fully, finally, and irrevocably released as provided in Section 4(f) below.

(e) <u>Release of Claims</u>. The Obligors, jointly and severally, hereby acknowledge and agree that the Bank is under no obligation whatsoever to reduce the release price for the Collateral under the Loan Documents. In consideration of the terms and conditions of this Agreement, made at the Obligors' request, the Obligors, jointly and severally, on behalf of themselves and their respective heirs, successors, and assigns hereby fully, finally, and irrevocably release the Bank and its officers, directors, affiliates, subsidiaries, parents, representatives, agents, attorneys, employees, predecessors, successors, and assigns ( collectively, the "Released Parties") from any and all defenses, counterclaims, offsets, cross-claims, claims, and demands of any kind or nature existing as of the Effective Date, including without limitation any usury or lender liability claims or defenses, whether known qr unknown and whenever and howsoever arising, relating to the Loan Documents or any past relationship between the Bank and the Obligors. In addition, the Obligors hereby agree not to commence, join in, prosecute, or participate in any suit or other proceeding in a position adverse to that of any of the Released Parties arising directly or indirectly from any of the foregoing matters. In addition, the Obligors, jointly and severally, hereby assign and convey unequivocally to the Bank, any and all defenses, counterclaims, offsets, cross-claims, claims and demands of any kind or nature existing as of the Effective Date, including without limitation any usury or lender liability claims or defenses, whether known or unknown and whenever and howsoever arising, relating to the Loan Documents.

ECF No. [25-1] at 23:<u>5. Payments; Modification</u>

…

(c) Sale Proceeds. The Bank shall retain a lien upon and perfected security interest in all of the proceeds from the Sale of the Condo Mortgaged Property, which proceeds shall continue to secure Borrower's obligations and indebtedness under the Note. To that end, Borrower shall execute and deliver to Bank a Collateral Assignment and Pledge of Account Agreement in the form attached hereto as Exhibit "A" (the "Pledge Agreement"). **The Sale proceeds shall be held in the restricted account specified in the Pledge Agreement and shall only be used to either: (i) pay down the outstanding principal balance under the Note, or (ii) purchase additional collateral real property of equal or greater value than the Condo Mortgaged Property (the "Substitute Collateral"). In the event that the Sale proceeds have not been used to acquire the Substitute Collateral by no later than January 1, 2024, then at any time thereafter the Bank shall have the**

**right (but not the obligation) to apply all Sale proceeds toward the outstanding principal balance under the Note without notice or demand to the Obligors.**

ECF No. [25-1] at 25-27 (emphasis added).

Before the Borrowers were able to use the sale proceeds for the purchase of substitute collateral, the Borrowers defaulted under the Note by failing to make the regular monthly payments of principal and interest when due on April 1, 2023, May 1, 2023, and June 1, 2023. *Id.* at ¶ 21. All proceeds from the sale of the Condo Property are currently held in a restricted account as collateral securing the subject loan pursuant to the terms and conditions of the Loan Modification Agreement and the Collateral Assignment and Pledge of Account Agreement. *Id.* at ¶ 22.

On July 7, 2023, Plaintiff filed this action against Defendants, alleging breach of the Moussa-Oliver Guaranty (Count I) and breach of the Oliver Guaranty (Count II). In their Answer, Defendants asserted their "First Affirmative Defense" stating "Defense of an action given before the accrual of a cause of action is unenforceable. Accordingly, Plaintiff cannot be deemed to have secured an unequivocal right of enforcement devoid of defenses prior to the occurrence of events giving rise thereto." ECF No. [14] at 5.

## II. LEGAL STANDARD

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*, 695 F.2d at 1296.

### III. DISCUSSION

    **A.  Summary Judgment**

        **1.  Language of the Guarantees**

Plaintiff argues that it is entitled to summary judgment because the clear and unambiguous language of the Guarantees provides that Guarantors unconditionally guarantee payment to Lender

of all amounts owed under the Note, the Guarantees remains in effect until the Note is paid in full, and Guarantors must pay all amounts due under the Note when Lender makes a written demand. ECF No. [24] at 4-5. Defendants respond and fail to provide support for their position, but argue that Plaintiff raised the interest rate from 5.25% to 9.82% and the sale of the Condo Mortgage Property should have been credited to the guaranteed amount. ECF No. [32] at 5, 7. Defendants argue that Oliver was presented with the loan documents while admitted as a patient at Mount Sinai Hospital in Miami Beach, such that he was unclear of their contents. *Id.* at 5. Plaintiff replies that Defendants cannot preclude summary judgment by raising only vague allegations, not pointing to facts in the record, not filing a responsive Statement of Material Facts, and by failing to provide the Court with a memorandum of law. *See generally* ECF No. [33].

"A guaranty is a collateral promise to answer for the debt or obligation of another." *Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985). "If a guaranty is free from ambiguity, it is strictly construed in favor of the guarantor…. If ambiguous, it is construed against the drafter." *Id.* "The extent of the guarantor's liability depends upon the language of the guaranty itself and is usually equal to that of the principal debtor." *Id.* However, "[a] contract of guaranty may provide for greater liability than that of the principal debtor." *Id.* at 807. "Under Florida law, rules applicable to contracts generally apply to guaranty contracts." *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1325 (M.D. Fla. 2002), *aff'd sub nom. Lockheed Martin Corp. v. Galaxis U.S.A. Ltd.*, 88 F. App'x 389 (11th Cir. 2003) (quoting Warner v. Caldwell, 354 So.2d 91, 96 (Fla.App.3d D.C.A.1977)). A breach of guaranty claim requires: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). "In Florida, the elements of an action for breach of a guaranty arise from a debtor's default and the guarantor's

subsequent failure to pay…. [T]he creditor has the burden of establishing that all of the conditions precedent to the guarantor's liability have occurred or were performed." *Venus Concept USA Inc. v. Rivera*, No. 0:21-CV-22877, 2022 WL 2651641, at *2 (S.D. Fla. July 8, 2022) (quoting *Bank First v. Guillem*, No. 609-CV-152-ORL-31KRS, 2009 WL 1930190, at *5 (M.D. Fla. June 30, 2009)). "[W]here a written contract unambiguously sets forth an unconditional guaranty, then the guaranty is absolute and the guarantor becomes liable upon non-payment by the principal[.]" *Regions Bank v. Velar*, No. 10-20318-CIV, 2010 WL 11602762, at *4 (S.D. Fla. July 20, 2010) (citation omitted). "[A] guarantor is released," however, "where the creditor materially alters the principal debtor's obligation to the detriment of the guarantor without the guarantor's consent*." Branch Banking & Tr. Co. v. Hamilton Greens, LLC*, 942 F. Supp. 2d 1290, 1297 (S.D. Fla. 2013) (quoting *Miami Nat'l Bank v. Fink*, 174 So.2d 38 (3rd DCA 1965)).

The record supports this Court's conclusion that the Guarantees are unambiguous and unconditional, and Guarantors are liable to the Plaintiff for the full amount claimed. The Guarantees state:

> 1. GUARANTEE:
> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

ECF No. [25-1] at 13, 18.

Moreover, the Guarantees are each labeled "Unconditional Guarantee[,]" *see id*. Defendants do not point to, nor does the Court discern, any terms in the Notes or Guarantees that would relieve Defendants from payment, nor any ambiguity in the Guarantee. "[W]here a written contract unambiguously sets forth an unconditional guaranty, then the guaranty is absolute and the guarantor becomes liable upon non-payment

11

by the principal[.]" *Regions Bank v. Velar*, No. 10-20318-CIV, 2010 WL 11602762, at *4 (S.D. Fla. July 20, 2010) (citation omitted).

Defendants cannot avoid payment of the Guarantees due to a change in interest rates when Defendants expressly consented to paying fluctuating interest rates. The Note on which the Guarantees are based state that the interest rate is the "[p]rime rate plus 2.00%." ECF No. [25-1] at 7. As defined in the Note, "[t]he 'Prime Rate' is the prime rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs." *Id.* In its Payment Terms section, the Note further defines the interest rates:

> The interest rate on this Note will fluctuate. The initial interest rate is 5.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.00%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.
> Borrower must pay principal and interest payments of $25,869.52 every month, beginning one month from the month this Note is dated; payments must be made on the same day as the date of the Note in the months they are due.
> ….
> The interest rate will be adjusted every calendar quarter (the "change period"), beginning January 1, 2022 (date of first rate adjustment).
> ….
> The adjusted interest rate will be 2.00% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.
> The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10. The interest rate adjustment period may only be changed in accordance with SOP 50 10.

ECF No. [25-1] at 8.

Defendants agreed to pay "all amounts due under the Note[,]" which includes the interest rates, when they signed the unconditional Guarantees on the Note, *id.* at 13, 18. Defendants have failed to establish that there is a genuine dispute of material fact as to their nonpayment of the

Guarantees by pointing to the change in interest rate, as Defendants expressly consented to such change when serving as Unconditional Guarantor on the Notes.

Plaintiff is correct that it is also entitled to attorney's fees. The Guarantees expressly provide for the recovery of fees. *See* ECF No. [24] at 12. The General Provisions of the Guarantees state: "ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." ECF No. [25-1] at 15, 20. Due to this unambiguous contractual clause, Plaintiff is entitled to recover attorney's fees from Defendants in this action.

Plaintiff is also entitled to the recovery of late fees. The Note states that "[i]f a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment." *Id.* at 9. Defendants accordingly agreed to late fees when they agreed to pay "all amounts due under the Note" in their respective Guarantees. *Id.* at 13, 18.

Though Defendants now assert Michael Oliver was in the hospital "recovering from a cardiac event" during the signing of the loan documents, ECF No. [33] at 16, Defendants do not set forth any legal argument as to why that renders the Guarantees invalid. Beyond each Defendant's affidavit, Defendants fail to cite to record evidence or produce any evidence to support their position, which a non-moving party must do to survive summary judgment. Indeed, "[a] party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242

(1986)). Defendants' bare allegation that one defendant was in the hospital at the time of signing is not sufficient to survive summary judgment here.

Accordingly, under the clear and unambiguous language in the Note and the Guarantees, Plaintiff is entitled to summary judgment for breach of guaranty against each Defendant (Count I and II), and is entitled to recover the loan principal, interest rate, late fees, and attorney's fees agreed under the Guarantees and the Note.[3]

### 2. Sale of the Condominium

Defendants argue that they did not default on the Guarantees because Plaintiff received the funds from the sale of the Condo Property on March 23, 2023 to pay the Guarantees. ECF No. [32] at 8. Plaintiff responds that the Defendants' subjective misunderstanding of the sale of the condominium cannot raise a disputed issue of material fact. ECF No. [24] at 7. Moreover, Plaintiff argues that Defendants fail to point to any contractual clause to support their contention, and the Loan Modification Agreement is clear that the sale proceeds of the condominium were expressly intended to be held in a restricted account as collateral securing the Note, which is precisely what occurred. ECF No. [33] at 4.

Plaintiff is correct that the Loan Modification Agreement is clear that the sale of the condominium did not relieve Defendants from their obligation to pay the Guarantees. The Loan Modification Agreement "among other things, provide[d] for the terms and conditions for the Bank's agreement to accept substitute collateral related to the sale of the Condo Mortgaged Property..." ECF No. [25-1] at 24. While Plaintiff could use the proceeds of the sale of the

---

[3] The Court will determine the amount of attorney's fees by separate motion pursuant to the Local Rules.

condominium toward the outstanding principal balance under the Note, Plaintiff was not required to do so. The Loan Modification Agreement states as follows:

> The Sale proceeds shall be held in the restricted account specified in the Pledge Agreement and shall only be used to either: (i) pay down the outstanding principal balance under the Note, or (ii) purchase additional collateral real property of equal or greater value than the Condo Mortgaged Property (the "Substitute Collateral"). In the event that the Sale proceeds have not been used to acquire the Substitute Collateral by no later than January 1, 2024, then at any time thereafter the Bank shall have the right (but not the obligation) to apply all Sale proceeds toward the outstanding principal balance under the Note without notice or demand to the Obligors.

ECF No. [25-1] at 27.

The Agreement was signed by both Defendants in their capacity as managers of the Borrowers and notarized. ECF No. [25-1] at 31. Plaintiff is accordingly correct that after January 1, 2024, it had no obligation "to apply all Sale proceeds toward the outstanding principal balance under the Note" but could instead use the proceeds to "purchase additional collateral real property of equal or greater value than the Condo Mortgaged Property[.]" ECF No. [25-1] at 27. The funds from the sale of the condominium did not pay off the Guarantees, for which Defendants are consequently liable. Accordingly, Defendants fail to raise a genuine dispute of material fact as to the Breach of Guaranty by pointing to the sale of the condominium.[4]

### B. Affirmative Defense

Defendants include an affirmative defense in their Answer that: "Defense of an action given before the accrual of a cause of action is unenforceable. Accordingly, Plaintiff cannot be

---

[4] Defendants do not make an argument about the timing of the Motion for Summary Judgment as it relates to discovery, which Plaintiff anticipatorily made in its Motion for Summary Judgment. Accordingly, the Court does not reach that issue. *See generally* ECF No. [33]; ECF No. [24] at 12-13.

15

deemed to have secured an unequivocal right of enforcement devoid of defenses prior to the occurrence of events giving rise thereto." ECF No. [14] at 5.

Plaintiff contends this affirmative defense cannot preclude summary judgment, as it is not supported by adequate evidence and is merely a legal conclusion that Defendants' defenses cannot be waived, which is legally incorrect. ECF No. [24] at 9. Though Defendants restate their affirmative defense in their Response, ECF No. [32] at 8, they do not point to any evidence in support of this affirmative defense.

The "mere assertion of an affirmative defense on which the [defendant] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment." *See Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1361–62 (M.D. Fla. 2008), aff'd, 306 Fed. Appx. 471 (11th Cir. 2009). Additionally, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof[,]'" such as an affirmative defense. *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (citation omitted). As the non-moving party, Defendants have not made any showing as to any elements of their affirmative defense, and the affirmative defense is therefore insufficient to survive summary judgment.

Accordingly, Plaintiff is entitled to summary judgment against both Defendants on each Count of its Complaint, breach of the Moussa-Oliver Guaranty (Count I) and breach of the Oliver Guaranty (Count II).

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment, **ECF No. [24]**, is **GRANTED**.
2. Final Judgment will be entered separately in favor of Plaintiff and against each

Defendant.

3. The Clerk of Court shall **CLOSE** this case for administrative purposes only.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida on June 14, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record